## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

DAWN M. S.[1],

      Plaintiff,

        v.                         CASE NO. 1:24-CV-211-SJF

FRANK BISIGNANO, COMMISSIONER
OF SOCIAL SECURITY[2],

      Defendant.

### OPINION and ORDER

Plaintiff Dawn M. S. ("Ms. S") seeks judicial review of the Social Security Commissioner's decision partially denying Ms. S's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This Court may enter a ruling based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g). [DE 12, DE 13]. For the reasons discussed below, the Court **REMANDS** the decision of the Commissioner of the Social Security Administration ("SSA").

### I.   OVERVIEW OF THE CASE

Ms. S protectively filed applications for DIB and SSI on May 19, 2022, alleging disability beginning May 23, 2019 (Administrative Record 17; hereinafter "AR"). She was denied initially, on reconsideration, and after a hearing before an administrative

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.
[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit.

law judge ("ALJ"). (*Id.*). The ALJ issued a partially favorable decision on August 1, 2023. (AR 14). Ms. S then requested further review of the ALJ's decision, and the Appeals Council denied this request on March 22, 2024. (AR 1). Thus, the ALJ's decision became the final decision of the Commissioner. *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005).

Ms. S filed suit in this court on May 23, 2024. This court has jurisdiction under 42 U.S.C. § 405(g).

## II.    APPLICABLE STANDARDS

### A.    Disability Standard

To qualify for DIB and SSI, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity is defined as work activity that involves significant physical or mental activities done for pay or profit. 20 C.F.R § 404.1572.

The Commissioner's five-step sequential inquiry in evaluating claims for DIB and SSI includes determinations of: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past relevant work based upon his Residual Functional Capacity ("RFC"); and, if not, (5)

whether the claimant is able to perform other work. 20 C.F.R. §§ 4041520; 416.920.[3] The claimant bears the burden of proof at every step except Step Five, where it shifts to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), as amended (Dec. 13, 2000).

### B.    Standard of Review

The Court reviews disability decisions by the Commissioner under 42 U.S.C. § 405(g). This Court's role in reviewing social security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The question on judicial review is not whether the claimant is disabled; rather, the Court considers whether the ALJ used "the correct legal standards and [whether] the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2014) (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence has also been understood as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); see *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). The Supreme Court has also noted that "substantial evidence" is a term of art in administrative law, and that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in social security appeals. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The Court reviews the entire administrative record to determine whether

---

[3] Regulations governing applications for DIB and SSI are almost identical and are found at 20 C.F.R. § 404 and 20 C.F.R. § 416 respectively. Going forward, this Opinion and Order will only refer to 20 C.F.R. § 404 unless explicit distinction between the DIB and SSI regulations is necessary.

substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

On the other hand, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, the ALJ must articulate her analysis of the record to allow the reviewing court to trace the path of her reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). The ALJ need not address every piece of evidence in the record so long as she provides a glimpse into the reasoning behind her analysis to build the requisite "logical bridge" from the evidence to her conclusions. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). If there is evidence that contradicts a finding of no disability, the ALJ must confront it and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014)(citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). If the ALJ's decision is not supported by substantial evidence, remand is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## III.  DISCUSSION

### A.    Summary of the ALJ's Decision Partially Denying Benefits

Ms. S's telephone hearing before the ALJ on her DIB and SSI applications took place on July 7, 2023. Ms. S appeared telephonically and was represented by an attorney. (AR 17). On August 1, 2023, the ALJ issued a written decision finding that Ms. S was not disabled prior to May 19, 2022, (or from May 23, 2019, through December 21,

2021, the date last insured), conducting the requisite five-step analysis for evaluating claims for disability benefits. 20 C.F.R. § 404.1520.[4] (AR 30).

At Step One, an ALJ's inquiry focuses on whether a claimant is engaging in substantial gainful activity. Here, the ALJ determined that Ms. S had not engaged in substantial gainful activity since her alleged onset date of May 23, 2019. (20 C.F.R. § 404.1571 et seq., and § 416.971 et seq.). (AR 20).

At Step Two, an ALJ's inquiry focuses on whether the claimant's impairments are severe. For an impairment to be considered severe, an impairment or combination of impairments must significantly limit the claimant's ability to perform basic work-related activities. 20 C.F.R. § 404.1521. The ALJ concluded that, since the alleged onset date of May 23, 2019, Ms. S suffered from the following severe impairments: lumbar degenerative disk disease with stenosis and radiculopathy, cervical degenerative disk disease with radiculopathy, asthma, venous insufficiency, chronic pain syndrome, schizoaffective disorder, bipolar type, posttraumatic stress disorder, and generalized anxiety disorder.[5] (AR 20). The ALJ thus concluded that these medically determinable impairments significantly limit Ms. S's ability to perform basic work activities as required by SSR 85-28. On the other hand, an impairment is considered non-severe when the medical evidence establishes only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on the claimant's

---

[4] The ALJ did, however, find that Ms. S has been disabled beginning May 19, 2022. (AR 30).
[5] The ALJ also found that, on the established onset date—May 19, 2022—Ms. S suffered from the following severe impairments: lumbar degenerative disk disease with stenosis and radiculopathy, cervical degenerative disk disease with radiculopathy, asthma, venous insufficiency, chronic pain syndrome, schizoaffective disorder, bipolar type, posttraumatic stress disorder, generalized anxiety disorder, and femoroacetabular impingement of the left hip. (AR 20).

ability to perform basic work functions. *See, e.g.*, 20 C.F.R. § 404.1522; S.S.R. 85-28, 1985 WL 56856 (Jan. 1, 1985). The ALJ found that Ms. S had the following nonsevere impairments: long-haul COVID, hypertension, umbilical hernia, hepatic lesion, GERD, and horseshoe kidney. (AR 20).

The ALJ concluded at Step Three that Ms. S does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The ALJ considered Listings 1.15, 1.16, 12.04, 12.06, 12.98, and relevant respiratory listings. (AR 21). Accordingly, before moving on to Step Four, the ALJ proceeded to determine whether Ms. S can perform her past relevant work based on her residual functional capacity ("RFC").

A claimant's RFC includes limitations for all medically determinable impairments, including non-severe impairments. 20 C.F.R. § 404.1545(a)(2). The RFC is the most that an individual can do despite her limitations. 20 C.F.R. § 404.1545(a). To determine a claimant's RFC, the ALJ must consider the claimant's symptoms, their intensity, persistence, and limiting effects, and the consistency of these symptoms with the objective medical evidence and other evidence in the record. 20 C.F.R. § 404.1545(a)(1). Physical exertion levels in an RFC are classified as either sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567. Here, the ALJ concluded that Ms. S retained the RFC to perform less than the full range of light work as defined in 20 CFR 404.1567(b). Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

The ALJ thus determined that Ms. S could:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance as defined in the [Selected Characteristics of Occupations] of the [Dictionary of Occupational Titles]; occasionally stoop, kneel, crouch, and crawl, frequent handling, fingering, and feeling, bilaterally, avoid concentrated exposure to hazards, such as unprotected heights and moving mechanical parts, avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants - as defined in the [SCO] of the DOT; and the claimant can understand, remember, and carry out simple instructions, and can have frequent interaction with coworkers, supervisors, and the public. (AR 23).

Based on this RFC, at Step Four, the ALJ found that Ms. S was unable to perform her past relevant work as a phlebotomist and medical assistant. (AR 28). Accordingly, the ALJ moved on to last step in the five-step sequential analysis to determine whether Ms. S could perform other work.

At Step Five, the burden of proof shifts to the Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant number in the national economy that [the claimant] can do, given his residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2); *see also Liskovitz v. Astrue*, 559 F.3d 736, 742-43 (7th Cir. 2009). The ALJ found that, while Ms. S could not perform any past relevant work, she retained the RFC to perform the representative jobs of: bench assembler (16,000 jobs nationally); collator operator (33,000 jobs nationally); and routing clerk (25,000 jobs nationally).

Finding that Ms. S could make an adjustment to other work that existed in significant numbers in the national economy, the ALJ determined that Ms. S was not under a disability, as defined in the Act, prior to May 19, 2022, or through the date last insured of December 21, 2021. (AR 30).

**B.    Issues on Review**

Ms. S makes two arguments that the ALJ's decision denying her applications for DIB and SSI should be remanded for further proceedings. Mr. S first contends that the ALJ rejected all three medical opinions in the record as unpersuasive and deemed the opinion from the consulting psychologist as "less persuasive," creating an evidentiary deficit in the record that the ALJ then impermissibly filled herself by "playing doctor." Next, Ms. S likewise argues that the ALJ cherry picked the record by ignoring lines of contrary evidence and by failing to build a logical bridge from the evidence to the RFC conclusions. Ms. S maintains that the ALJ mischaracterized Ms. S's MRI results and failed to cite substantial evidence to explain how this imaging does not support Ms. S's alleged limitations.

The Commissioner argues that the ALJ supported her determination of Ms. S's RFC with substantial evidence. The Commissioner also contends that the ALJ properly evaluated Ms. S's subjective allegations and the medical opinions in the record. As to the latter, the Commissioner contends that the ALJ's decision not to rely on the medical opinions did not create "evidentiary deficit" because the ALJ properly relied on other substantial evidence in the record.

For the reasons explained below, while the ALJ's consideration of the opinion rendered by the consulting psychologist did not create an evidentiary deficit, the ALJ's total rejection of the three medical opinions for Ms. S's physical impairments did create an evidentiary deficit as to her physical RFC. The Court cannot find that the ALJ properly filled this gap with other evidence in the record, as the ALJ wholly rejected the opinions and ultimately determined RFC limitations by interpreting raw medical evidence in the record.

### C.    Analysis

Ms. S contends that by finding the medical opinions in the record as either "not persuasive," "less persuasive," or "unpersuasive," the ALJ created an "evidentiary deficit" that requires remand for further administrative proceedings. In support, Ms. S cites to *Boyles v. Comm'r of Soc. Sec.*, No. 1:21-CV-442 JD, 2022 WL 16570645, at *4 (N.D. Ind. Nov. 1, 2022) and *Willis v. Acting Comm'r of Soc. Sec.*, No. 3:21-CV-178 JD, 2022 WL 2384031, at *3 (N.D. Ind. July 1, 2022). Ms. S, quoting *Willis,* states that the ALJ's "failure to adopt any medical opinion left an evidentiary gap that prevented her from building a logical bridge between her evidentiary analysis and the ultimate RFC." *Willis,* 2022 WL 2384031, at *3. But an ALJ's decision not to adopt any medical opinion does not necessarily mandate remand. Indeed, while "an ALJ must consider the entire record [in forming an RFC], the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Gase v. Comm'r of Soc. Sec.*, No. 1:23-CV-00295-SLC, 2024 WL 3565473, at *4 (N.D. Ind. July 25, 2024)(quoting *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007)). Other courts in this

circuit have found that "[t]he mere fact that the ALJ discounted these physicians'
opinions about [a claimant's] limitations and crafted a physical RFC from the totality of
the evidence of record is not grounds for remand." *Gase*, 2024 WL 3565473, at *4; *see also*
*Laughton v. O'Malley*, No. 1:23-CV-35-HAB, 2024 WL 748752, at *5 (N.D. Ind. Feb. 22,
2024)("Thus, there is not an evidentiary deficit simply because an ALJ rejects the
opinions of the agency reviewing and consulting physicians. Rather, the question is
whether the rest of the record supports the ALJ's RFC assessment.") Put another way,
"the caselaw in this Circuit supports the assertion that an ALJ rejecting all medical
opinions **may,** but does not always, create an evidentiary gap in the record that requires
remand." *Michael B. v. Bisignano*, No. 4:24-CV-00043-KMB-TWP, 2025 WL 1770747, at *2
(S.D. Ind. June 26, 2025) (emphasis added). Thus, the Court must consider an ALJ's
analysis of the record to determine whether it supports the ALJ's RFC determination
here.

For claims filed after March 27, 2017, such as Ms. S's claim, an ALJ "does not give
any specific evidentiary weight, including controlling weight, to any medical opinion(s)
or prior administrative medical finding(s), including those from [a claimant's] medical
sources." 20 C.F.R. § 404.1520c(a). The regulations instead require an ALJ to explain
"how persuasive [she] find[s] all of the medical opinions and all of the prior
administrative findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b).
Persuasiveness of a medical opinion is based upon several factors: supportability;
consistency; relationship with the claimant, including the length of the treatment
relationship, frequency of examination, purpose of the treatment relationship, extent of

the treatment relationship, and examining relationship; and specialization. 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). "Supportability measures how much the objective medical evidence and supporting explanations presented by a medical source support the opinion," while "consistency assesses how a medical opinion squares with other evidence in the record." *Michelle D. v. Kijakazi*, No. 21 C 1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31, 2022) (internal citation omitted). Accordingly, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(1). Likewise, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.*

The ALJ must "explain how [she] considered the supportability and consistency factors." *Id.* "Failure to adequately discuss supportability and consistency requires remand." *Willis*, 2022 WL 2384031, at *3 (citing *Tammy M. v. Saul*, No. 2:20CV285, 2021 WL 2451907, at *7 (N.D. Ind. June 16, 2021)). However, the ALJ is not required to explain how [s]he considered the other factors if they are not relevant to the decision. *Id.* Consistent with general legal standards for reviewing social security cases, an ALJ need only "minimally articulate his reasoning for how he assessed a medical opinion, [but] [s]he must still consider the regulatory factors and build a 'logical bridge' from the evidence to his conclusion." *Taylor v. Kijakazi*, No. 2:22-cv-32-PPS-JPK, 2023 WL 334601,

at *3 (N.D. Ind. Jan. 20, 2023) (internal citation omitted). "At the end of the day, once the administrative law judge properly considers these factors, we must allow that decision to stand so long as the administrative law judge minimally articulated his reasons—a very deferential standard that we have, in fact, deemed lax." *Crowell v. Kijakazi*, 72 F.4th 810, 816 (7th Cir. 2023) (quotation marks and citation omitted).

As part of the RFC determination, the ALJ considered medical opinions from the state agency; from Dr. Dan L. Boen, Ph.D. HSPP and Dr. Abdali Shakoor Jan, M.D., consultative examiners; and from Dr. Jiminez, a treating physician. Ms. S challenges the ALJ's analysis discounting the medical opinions of both consulting psychologist Dr. Boen and consulting physical examiner Dr. Jan, contending that doing so here did create an evidentiary gap that the ALJ filled by playing doctor.

### 1.    Opinion from Dr. Dan L. Boen, Ph.D. HSPP

Dr. Dan L. Boen, Ph.D. HSPP is a licensed psychologist who examined Ms. S in September 2022 and executed clinical tests. Dr. Boen's summary of the Ms. S's examination included the following:

> Memory
> [Ms. S] was asked to recall three objects immediately and in five minutes. [Ms. S] recalled three of the three objects immediately and one of the three objects in five minutes. [Ms. S] could recall five digits forward and four digits backward.
>
> Calculations
> [Ms. S] could do both of the two math calculations and one of the five subtractions of 7s from 100. [Ms. S] could count down from 20 by 3 s for six of the six subtractions.
>
> Information and Vocabulary
> Dawn correctly answered five of the five informational questions and ten of the ten vocabulary words. Dawn was oriented to time, place, person, and situation. Dawn can handle money. Dawn was responsive in speech and cooperative with the examiner. Dawn's mood was normal. Dawn's

affect was normal. Dawn's behavior was normal. Dawn is not on psychotropic medication.

Dawn's thought form contained auditory and visual hallucinations as well as paranoid ideation and mild suicidal ideation with no imminent intent or plan. She also tended to think organically and had loose associations in her thought process. Dawn's consciousness was normal. Dawn's concentration was moderately below normal. Dawn's immediate recall was normal. Dawn's short-term memory was moderately below normal. Dawn's longterm memory was normal. Dawn's bind of information was average. Dawn's level of intelligence was average. Dawn's judgment was normal. Dawn's level of insight was normal.

(AR 592-93). Dr Boen concluded the examination with the following medical source

statement:

> [Ms. S] would not have trouble understanding what [she] was asking to do on a job. [Ms. S.] would have trouble remembering what [she] was asked to do on a job. [She] would have difficulty being able to concentrate on the job. [Ms. S] would have difficulty being able to stay on task. [She] would not have difficulty being able to get along with coworkers. [Ms. S] would not have difficulty being able to get along with a boss.

(AR 593).

The ALJ discussed Dr. Boen's examination in the decision and found that it was

"less persuasive." (AR 25). The ALJ stated that Dr. Boen offered only "a vague opinion

that [Ms. S] would have trouble understanding, remembering, concentrating, staying on

task, and getting along with others." (*Id.*). The ALJ thus stated that

> The degree to which [Ms. S's] 'trouble' would cause limitations of function, and what kind, is unclear and is not a vocational limitation. While the undersigned agrees that [Ms. S] does experience mental limitations of function, due to the lack of clarity in this opinion, **it is found less persuasive**. The undersigned notes [Ms. S] has not had any mental health treatment and her mental status examinations have been within normal limits.

(AR 593, emphasis added). Ms. S challenges the sufficiency of this analysis by

contending that, if the opinion was "vague," the ALJ should have contacted the

consulting psychologist for clarification, citing *Kaitlyn C. v. Kijakazi*, No.

13

121CV00931MJDTWP, 2022 WL 1301753 (S.D. Ind. May 2, 2022). Indeed, it is true that "[a]n ALJ may not rely solely on vagueness in rejecting a medical opinion," the Court cannot find that the ALJ rejected Dr. Boen's opinion solely based on vagueness, nor can the Court find that the ALJ was required to recontact Dr. Boen here. *Christopher A. B. v. Dudek*, No. 1:24-CV-00152-KMB-RLY, 2025 WL 794357, at *5 (S.D. Ind. Mar. 13, 2025)(citing *Tanya S. v. Kijakazi*, 2021 WL 6201733, at *12 (N.D. Ind. Dec. 31, 2021). First, the ALJ sufficiently articulated how the opinion was unsupported and inconsistent with the record. The ALJ explained that the opinion does not give specific limitations and that other examinations in the record were normal. *See, e.g., Michael T. v. Kijakazi*, No. 22 C 2883, 2023 WL 7281819, at *6 (N.D. Ill. Nov. 3, 2023). Moreover, an ALJ is only required "to seek additional information if the support for a medical opinion is not 'readily discernible.'" *Cain v. Bisignano*, No. 24-1590, --- F. 4th ---, 2025 WL 2202133, at *6 (7th Cir. Aug. 4, 2025)(citing *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009); *see also* 20 C.F.R. §404.1520b(c)(2) ("[SSA] will try to resolve the inconsistency or insufficiency [in the evidence] by taking any one or more of the actions listed . . . [SSA] may recontact your medical source. . . ."

Importantly, while the ALJ may have found Dr. Boen's opinion "less persuasive," the ALJ did not wholly discount it. Indeed, the ALJ cited Dr. Boen's opinion, along with other evidence in the record, as part the ALJ's analysis of Ms. S's mental RFC limitations:

> Finally, the claimant is also limited by mental health impairments. Records do show the claimant reporting sadness, feeling depressed, trouble concentrating, trouble focusing, and mood swings, but observations were for good eye contact, negative for agitation, and the

> ability to recall 3/3 objects after a delay. She had some fatigue and could not complete serial sevens, but she did not require hospitalization, crisis care, or ongoing talk therapy. The claimant is accommodated by the residual functional capacity. (Exhibit 3F/33, 4F/6, 10F).

(AR 24). The ALJ cited Dr. Boen's opinion, along with other evidence, explaining that these records showed that Ms. S could follow instructions about healthcare, comply with treatment, respond to questions to providers. (AR 22). The ALJ also discussed evidence showing that Ms. S prepared meals, watched TV, read, played games, and managed funds. (*Id*.). The ALJ also discussed evidence that Ms. S can work on her farm, care for her animals, that she has appropriate grooming and hygiene, and no problems getting along with others. (*Id*.). Thus, the ALJ discussed sufficient evidence to explain her decision. *See Brenda S. v. Kijakazi*, 2021 WL 3749048, at *4-5 (S.D. Ind. Aug. 25, 2021)("[T]he regulations do not require an ALJ to recontact a doctor where there is adequate information to render a decision.")

Based on this, the Court cannot find that the ALJ's consideration of Dr. Boen's opinion created an evidentiary deficit, nor can the Court find that the ALJ failed to minimally articulate her reasons for finding the opinion "less persuasive" under the regulations. *See*, e.g., *Gase*, 2024 WL 3565473, at *6; *Michael T.*, 2023 WL 7281819, at *7.

### 2.   Dr. Abdali Shakoor Jan, M.D. and Ms. S's MRI

Ms. S also challenges the ALJ's statements discounting the medical opinion from Dr. Abdali Shakoor Jan, M.D. Dr. Jan examined Ms. S in October 2022 and summarized his findings from the physical exam. Dr. Jan then issued the following medical source statement:

> Based on physical exam findings, medical history and imaging/laboratory results, the patient can sit for 10 minutes and

> stand for 10 minutes. Patient can walk for 1 block[] before needing to rest due [to] fatigue and chronic back and hip pain. Patient has normal fine motor skills with abnormal handling of objects due to decreased grip strength. Normal concentration and social interaction. Patient indicates understanding throughout the examination and elicits cognizance. Remote and recent memory intact. Normal hearing, speech and vision, she cannot carry twenty pounds short/long distances, she cannot lift ten pounds over their head one time.
> Patient reports chronic fatigue and generalized pain. She says she has good and bad days. She has trouble standing or sitting for long periods of time. She does not sleep well. She reports chronic generalized pain for fibromyalgia. She also reports depression and anxiety. She says she lives on a farm and [is] able to [do] most chores on good days, but has trouble doing simple tasks on her bad days. She currently has labral tear and gluteus minimus tear of her left hip for which she has upcoming surgery. (AR 602).

The ALJ found Dr. Jan's opinion "unpersuasive," stating that "[a]side from some minimal limitations in range of motion and difficulty with heel and toe walking, the exam findings conducted by Dr. Jan is otherwise relatively normal - her gait was intact, her strength was intact, her range of motion was otherwise intact, and she had no need for an assistive device. She reported pain, but she was not in acute distress." (AR 25). The ALJ thus stated that Dr. Jan's opinion was "not consistent with or supported by either this exam or the record as a whole that shows gaps in the treatment record and that [Ms. S] was able to work on her farm walking over 30k steps in a day." (*Id.*)

Ms. S challenges the ALJ's analysis that Dr. Jan's opinion was unpersuasive, contending that the ALJ did not consider that Dr. Jan's examination also included his review of Ms. S's medical history and records, including diagnostic imaging. Ms. S contends that by rejecting this opinion—as well as the other medical opinions in the record—the ALJ interpreted Ms. S's medical history and imaging results unilaterally.

At the outset, it is undisputed that, by finding Dr. Jan's opinion "unpersuasive," by deeming the opinions of the state agency reviewers "not persuasive" and by holding

16

a statement from a treating physician also "unpersuasive," the ALJ rejected all medical opinions pertaining to Ms. S's physical impairments. (AR 25). But, as explained *supra*, this does not inevitably create an evidentiary deficit, as "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Thus, while "[t]he ALJ is not required to support her RFC determination with a specific medical opinion, but when the ALJ rejects all medical opinion evidence in the record she has a duty to conduct an appropriate inquiry to fill that gap.'" *Marva S. v. O'Malley*, No. 21 CV 5922, 2025 WL 27490, at *5 (N.D. Ill. Jan. 3, 2025)(internal citation omitted). To avoid an evidentiary deficit in that circumstance, an ALJ must articulate the evidence that supports the RFC determination and cannot determine a claimant's RFC based on their own lay opinion. *Patricia A. P. v. O'Malley*, No. 3:23-CV-00240-MGG, 2024 WL 1298685, at *5 (N.D. Ind. Mar. 26, 2024). Ms. S contends that the ALJ failed to properly fill the gap here, emphasizing the ALJ's discussion of Ms. S's MRI from December 2018.

The record includes an imaging report from Ms. S's lumbar spine MRI on December 28, 2018. (AR 553-54). The report lists the following findings:

> Soft tissues: The left kidney is not visualized and is normal location.
> Suggestion of a horseshoe kidney, which does not significantly across [sic] to the left of midline.
> Bones: Bilateral L5 pars defects. No compression deformities. Presence of several small hemangiomas throughout the lumbar spine.
> Alignment: Grade 2 anterolisthesis of L5 on Si.
> Cord: Unremarkable and terminates at a normal level.
>
> T12-.L1: No significant spinal canal or foraminal narrowing.
> L1-L2: No significant spinal canal or foraminal narrowing.
> L2-L3: No significant spinal canal or foraminal narrowing.
> L3-L4: No: significant, spinal canal or foraminal narrowing. Disc desiccation without spondylosis. Minimal central disc protrusion. Mild to moderate facet hypertrophy.

> L4-L5: No significant spinal canal or foraminal narrowing. Disc desiccation without spondylosis. Small central disc protrusion measuring 3 mm in AP diameter. Mild to moderate facet hypertrophy.
> L5-S1: Disc desiccation with advanced spondylosis. Uncovering of a small broad-based disc bulge. Moderate to severe right and moderate left neuroforaminal narrowing with compression of the exiting right L5 nerve root.
> No significant central canal stenosis. Moderate to severe facet hypertrophy.
> Included sacrum: No acute abnormality of the visualized sacrum.

(AR 553). The report concludes with the following impression:

> Bilateral L5 pars defects with grade 2 anterolisthesis of L5 on SI which results in moderate to severe right and moderate left; neuroforaminal narrowing with some compression of the exiting right L5 nerve root. Small central disc protrusion at L4-L5. Presence of what appears to be a horseshoe kidney confined to the right side of the abdomen; evaluation is limited.

The ALJ discussed the MRI in the decision, using it to support the limitations assessed and to explain why greater limitations were not supported, stating

> greater limits . . . are not supported because despite an MRI that showed bilateral L5 pars defect with grade 2 anterolisthesis of the L5-S1, resulting in moderate right and moderate left neuroforaminal narrowing with some compression of the exiting right L5 nerve root the claimant was not in distress, her strength was intact, and she had a normal gait.

(AR 24). Ms. S contends that, because the ALJ rejected all medical opinions regarding her physical impairments, the ALJ interpreted the significance of the MRI unilaterally. Likewise, Ms. S challenges the ALJ's interpretation of Ms. S's imaging results, contending that the ALJ cherry picked information from the results to find that Dr. Jan's opinion was inconsistent with the record.

Ms. S contends that the ALJ failed to adequately explain how examination findings that Ms. S was not in distress, that her strength was intact, and that she had a normal gait negate the findings in the MRI that she had "disc dessication with advanced spondylosis" or "moderate to severe facet hypertrophy." (AR 553). The Court agrees. Here, the ALJ simply stated that the MRI did not warrant additional limitations because

Ms. S was not in distress, her strength was intact, and she had a normal gait—without adequately explaining how this evidence was more persuasive than Ms. S's MRI results. Ms. S also contends that the ALJ mischaracterized the MRI impression by discussing only the "moderate" result instead of the "moderate to severe" finding. "[I]t is for doctors, and not ALJs to interpret x-rays, MRIs, and other raw medical data, even if those scans appear to be mild or unremarkable." *Theresa M. v. Saul*, No. 19 C 3135, 2020 WL 7641286, at *5 (N.D. Ill. Dec. 23, 2020). The Commissioner responds that the ALJ's summary of the MRI "is nearly a verbatim quote of one written by plaintiff's doctor" and thus does not require remand. [DE 22 at 5]. The Court cannot find that persuasive here, as this would still prevent the Court from tracing the path of the ALJ's reasoning here. *See Donna M. J. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00556-MGG, 2022 WL 594144, at *6 (N.D. Ind. Feb. 28, 2022)( "[T]he April 2019 MRI contains a summary of complex medical findings without context as to what those findings mean. . . . . As written by the ALJ, the x-ray and MRI amount to nothing more than medical gibberish . . . .").

In sum, the ALJ, after rejecting all medical opinions in the record, discussed data from an MRI to state that further limitations were not warranted, and did so without sufficient explanation. *See Michael B.*, 2025 WL 1770747, at *3 ("[W]ithout relying on something to interpret the A1c levels or the effect of neuropathy on Michael's functional limitations, the ALJ failed to construct the requisite accurate and logical bridge from the evidence to the ALJ's middle ground physical RFC.")(internal citations and quotation marks omitted).

Thus, the Court is unable to trace the ALJ's reasoning, nor can the Court find that the ALJ supported the physical limitations assessed in the RFC with substantial evidence. *Pereida v. Saul*, No. 220CV00107RLMSLC, 2021 WL 327517 (N.D. Ind. Jan. 14, 2021), *report and recommendation adopted,* No. 2:20-CV-107 RLM-SLC, 2021 WL 327397 (N.D. Ind. Feb. 1, 2021) ("The ALJ did not provide evidence to explain how he came to the RFC limitations, [] the creation of such middle ground without medical evidence to support his decision requires remand."); *but see Jennifer M. v. Bisignano*, No. 23 CV 2219, 2025 WL 2463059, at *4 (N.D. Ill. Aug. 26, 2025)(affirming, finding that an ALJ did not create an "evidentiary deficit" or "play doctor" in part because "the ALJ did not try to interpret raw medical data, such as an x-ray or MRI, without medical assistance" when forming the RFC.  Without relying on any medical opinion in the record, it is possible that even the minor wording changes made by the ALJ amounted to a unilateral interpretation of the MRI.

Ms. S has raised other issues in support of remand. The ALJ will have the opportunity to fully discuss and reevaluate her other allegations on remand. This is not to say that there are no other errors in the ALJ's decision, but the Court need not discuss Ms. S's other arguments when the Court has already identified a reason for remand.

## IV.   CONCLUSION

For the reasons stated above, the Court concludes that the ALJ's RFC analysis was not supported by substantial evidence. Accordingly, the Court now **REMANDS** this action to the SSA for further administrative proceedings consistent with this opinion.

**SO ORDERED** this 19th day of September 2025.

s/Scott J. Frankel
_____
Scott J. Frankel
United States Magistrate Judge